Thank you, Your Honor, and may it please the court. I'm Jocelyn Hunt, Assistant Federal Defender with the Federal Defenders of Montana, representing Mr. Jeff Knapp in this case. We've raised three issues on appeal. I'd like to start today, however, with the trial issue and the government's lack of proof in this case. Because what this case boils down to is the government saying that all they had to prove, as it concerned Mr. Knapp, was that he knew he was convicted of a felony for which he served longer than one year. That was the extent of what they needed to prove. Not that he knew he was prohibited from possessing a firearm. And that approach is too narrow under Rehoff. Rehoff must actually mean more if we're giving that case its due. On the facts of this case, we have a person who, upon his release from prison, is given a prison packet. And in that packet is a document that says he's unconditionally discharged. That's what Mr. Knapp knew. Well, counsel, counsel, what it says is, unconditionally discharged from the custody of the Is that what it says? Yes, it does, your honor. And even though it does say Department of Corrections, what it doesn't say, and nor has the government ever provided any proof of, is that his firearms rights are prohibited. There is no statement on that document prohibiting his firearm rights. So you're saying that, as a matter of fact, the government has to prove that? I mean, haven't they proved as a matter of law that, I mean, I know this went to the jury, but haven't they proved as a matter of law that his firearms rights weren't restored, that Colorado law prohibited him at the time of his release from possessing firearms? They did not prove that, as a matter of law, he was prohibited. Certainly, we argued pre-trial that his rights were restored, and that shouldn't have even gone to the jury. But as it concerned the jury process, they proved, they didn't contradict anything as it concerned what Mr. Knapp stated. There was no statement from Colorado, no statement from defense counsel prosecutor, any entity in Colorado saying that his rights were prohibited. Instead, he has... I don't understand your argument, counsel. I mean, to me, they proved he didn't have the right to carry a firearm. He testified as to his state of mind, and the AUSA cross-examined him. Are you saying that in every one of these cases, unless the government can present evidence that someone was given a piece of paper that says, and by the way, you still can't carry firearms, that the government's proof is insufficient? I am saying in cases of 922G, when it concerns the prohibition as to the gun rights, if somebody has served longer than one year, they are also, under 922G1, grafted onto that is the exception of restoration of rights. They must go a step further and prove that he knew of his status, of his relevant category, of being a prohibited person. And on the facts of this case, they had no proof of that. Instead, we have proof that he knew he was unconditionally discharged. They never contradicted that. So if a defendant goes in, for example, and says, because the flag in the courtroom where I was convicted has braids, that the court had no jurisdiction, so I was never validly convicted. Is that worth two? I'm not sure I follow your hypothetical. There are people who say that because the flags in the courtrooms aren't real, that the judges have no jurisdiction. And if somebody comes in and testifies that, you know, I didn't believe that I was validly convicted because of some defect like that, does the government have to affirmatively prove that somehow that they're lying about that? I think the government, on the facts of this case, have to present something that he knew he was prohibited. How, especially under Rehoff, that case says you have to know, you have to present proof of knowledge of the status, the relevant category that you're in. The statute says it shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. That's what G1 says. And they certainly stipulated to that. And I think what you may be asking is, is because if he is certainly that doesn't apply if his rights have been restored. But and that's what he claimed, I guess, when he testified. But why is that? And why is that required under the recent Supreme Court decision that the government that that's the government's burden to prove that, which is what you seem to be saying, or whether it was and it could be an affirmative defense. And of course, that, you know, that's another issue as to whether or not there has to be proof that that he did not know that. So I mean, that's the problem. I think we're the judge Bennett and I are having why is that a burden of the government now, after the Supreme Court decision that they have to now prove that he didn't know his rights were restored? Yes, your honors. The requirement is now upon the government under rehab because that case makes it a point for the knowledge piece to apply to his relevant category. His relevant category is as Judge Bennett indicated under G1, defined with that crime punishable, etc. That is also defined under 921. A 20. That then talks about restoration. So that the knowledge piece applies to that full statutory context. Granted, the rehab case was a different subsection under 922. But it's knowledge about the relevant category. He did not know anything about his firearm rights upon his release from prison. On that point, if we agree with you, just for the sake of argument that the government was required to prove this, is your argument really that their evidence was insufficient? What is your argument? That they haven't met their burden and that the judge Why not? That a fact finder could not decide? They did not contradict any evidence as it concerned his knowledge as to his status of being a prohibited person. Well, you didn't ask for, but there wasn't a request for an instruction. You didn't ask for an instruction. There was a request for an instruction on that issue. I didn't find that in the record at all. And you certainly haven't argued on appeal that the failure to give that instruction. I didn't see anything about that. It is in the record that we were denied the right to have an instruction as to his status. But counsel, Silver is clearly correct that you haven't made that argument on appeal. There's correct? The argument is the lack of proof altogether. There wasn't substantial evidence. It seems to me like that's what you're arguing. And I come to the same cross-examination that I think one of my colleagues, I think it was Judge Bennett was referring to. The jury's not required to believe him. But there was examination on this issue about the extent to which he did or did not think his rights had been restored. So even if I agree with you or assume under our more recent Ninth Circuit case last week, I'm not sure you're familiar with it. My read of it is that it helps you on that point. It's not dispositive. But for purposes of argument, I'm not sure why you think the government's proof was insufficient. And on top of that, let me just add too, is that if that was required, then it doesn't seem to me that that's a requirement of the government. It seems to me that all the government has to do is establish that particular category. And if he's claiming an affirmative defense, that's his obligation. Of course, the government still has to prove beyond reasonable doubt. But it seems to me that that's his affirmative defense. Then if you take that into conjunction with what Judge Bennett and Judge Christian have said, that the evidence was substantial that he at a trial. Why isn't that have been established through the evidence at trial? The evidence at trial was not substantial. It was actually uncontradicted as it concerned what Mr. Knapp knew. And they are required to prove that knowledge under re-hate. The only test... But why is it an affirmative defense? His affirmative defense was that he was mistaken as to his knowledge. And certainly we raise that. But separately from that, they were required to prove that he actually knew he was prohibited. And the only evidence presented was that the officer who actually went to see if his rights had been restored. He wasn't entirely certain if he actually got a definitive answer as to that. And then he didn't actually even have the prison packet information that Mr. Knapp knew that he was unconditionally discharged. But counsel, your client said he relied on the statutory discharge. That's what he said on direct, right? He stated he knew when he went to prison, his right to vote, right to sit on a jury, right to... And his right to firearms were taken away. He had paid his debt to society upon his relief. That was his understanding upon that. And he relied on the discharge and the cross-examination. I think it's ER 248 to 249. He first said he thought it was in the discharge paper itself. He said that, no, it really doesn't say that. It doesn't specifically state each right. And it doesn't say I can serve on a jury. It doesn't say anything about civil rights. It doesn't say anything about firearms. I mean, in a normal case, no jury is required to accept someone's scienter statement. And there's always an instruction. The jury has to look generally at circumstantial evidence to determine scienter. Why is this not the normal case? Because what also, beyond them not proving that he knew by them ever having told him, giving him any notice that he couldn't have a firearm upon his release from prison, we also have that lack of notice is the difference in this case. The fact that he has that discharge paperwork. And on that paperwork, it doesn't even give him notice that he has no right to possess firearms. It's their obligation to give him notice that he cannot have a firearm. And there's no evidence presented from day one on this case that they ever advised him upon his release from prison or otherwise, he couldn't have a firearm. That is why this case is different. Forgive me. I didn't mean to interrupt you. I thought you were done. I was time for rebuttal. Yes, that would be fine. Thank you. Okay. Let's hear from the government, please. Good afternoon. May it please the court. Jennifer Clark on behalf of the United States. I'll start with where the defense left off, or excuse me, the petitioner left off regarding the sufficiency of the evidence regarding knowledge. While it is proper for the court or jury to consider the defendant's belief that his rights have been restored, that doesn't shift the burden to the government to prove any additional facts. In fact, the government can rely on its case-in-chief. There are several paths that the government could take once the defendant raises a mistake of that defense. One would be that he relies on the evidence that was or the government relies on the evidence that was presented in its case-in-chief. One would be through cross examination of the defendant, and one would be to call additional evidence in rebuttal. Counsel, have you read the door case that Judge Kristen mentioned? I have not. I just want to say that the burden of proof on the government remains the same throughout the trial. The government always has the burden of proving the elements beyond a reasonable doubt. And in this case, the government did so. First, there was the stipulation that was given as an instruction to the jury. It was instruction number nine that can be found at 2 ER 150. The testimony of Special Agent Springer, he had testified that the defendant was sentenced to a term exceeding one year, which is putting him on notice that he fits into that category. He testified about other remaining obligations that the defendant had on his sentence. He testified that the qualifications, the convictions were qualifying to prohibit him from possessing firearms, and that he was not aware of any restoration of the defendant's rights. He was cross-examined about the statutory discharge from the facility. He testified that it did not appear to restore any of the civil rights to the defendant. Then Mr. Knapp took the stand. He testified again about his belief that his rights have been restored. Again, the government in this case cross-examined him regarding that statutory discharge being from the facility, being from in custody rather than his sentence. Mr. Knapp also testified that he had served a sentence over one year, which puts him again on not notice that he is in that category. I want to make sure you address whether you think REHAFE applies to the case here. We know that the defendant has to have knowledge of crime punishable by a year, right? Correct. So why would, in the government's view, why shouldn't we go deeper into the definition section where you have all this information about pardon, expungement, restoration of civil rights. Why should we stop after crime punishable by imprisonment for a term exceeding one year in the actual statute and not go into the definitional statute and all the elements of that? I think we do go into that. In fact, the jury in this case was instructed about 921-A20, and that was in instruction 16, which the court can find at 2ER-157. But they were simply instructed to determine whether his rights had been restored, not to his knowledge of that, right? They were instructed on his knowledge. They were instructed on the REHAFE element regarding status, and that was instruction 12. So they were instructed that he had to know that he was a member of that category. And they were instructed on 921-A20 that said that if his rights had been restored, that conviction wouldn't qualify. So it's, as Judge Christian noted, the jury does not have to believe the defendant when he raises a defense as to mistake a fact and that he believed that his rights had been restored. We ask the jurors to consider a witness's testimony in light of all of the evidence and that they get to determine the credibility of that witness. And that was instructed in instruction number 7 at 2ER-147. I think one thing to look at in the knowledge aspect is that knowledge that we're talking about relates to conduct as it relates to status. And it's something that prosecutors face every day when prosecuting cases regarding possession. And they do that through their case in chief. Anything further, counsel? Just, Judge, I know that Ms. Hunt had raised in her brief about the motion to dismiss, and I'd just like to point out the law of the circuit is controlling on that matter, that this court is held in Collins and in Huss and Cardwell, that it is not an ex post facto violation to look at the state law in effect at the time of restoration when determining whether or not an individual's rights have been restored. And in this case, there was a Colorado statute that, in fact, prohibited Mr. Knapp from possessing firearms once he was released. Let me ask you a question, and it's a follow up on Judge Bennett, on whether or not Raheif requires to go further, and that is dig deeper and also establish that he knew he did not have his rights restored. Assuming that, hypothetically, that is required under Raheif, you talked about direct and cross-examination. Did the evidence, was there enough evidence for the jury to find beyond a reasonable doubt that he knew he did not have his rights restored? Yes. I think that was fleshed out a lot in cross-examination by the government, addressing the fact that this was a statutory discharge from the facility and not from his sentence, also establishing that he had other obligations stemming from this conviction. So that would be an indication to him that his rights had not been fully restored. Anything further? No, nothing further. Thank you. Thank you for your helpful argument. Opposing counsel still has some time left on the clock. Go right ahead, please. Counsel, if you're talking, you're muted. I can't even tell if your lips are moving, but if you're talking, we can't hear you. You want to start over? I knew I'd forget to do that. Not at all. We all do. So, yes, I'd like to start with whether Raheif should actually, you should go that far. And, yes, of course, you should, because that's what Raheif requires. That case, the subsection in that case was not further defined, but it talks about a defendant's lack of intent and in the possession of the firearm and whether his behavior was wrongful. The jury was obviously confused about that point because they sent out a question. Were his rights restored? Yes or no. They were not instructed as to his status of being a prohibited person. The instructions stopped as it concerned the crime punishable of a year or longer. And even in the regular case, let's take aside the Rehoff challenges that we face in this case. It is the government's burden, once evidence is presented, to rebut it, and they did not in this case. Not only did they not bring evidence about his knowledge from the get-go, they did not rebut it. And that is their burden. That, again, is the reason why judgment should have been granted in this case. The stipulations in this case were carefully crafted. They were thoughtfully crafted in order to assess whether, legally and factually, we could address these points before the jury. We haven't, of course, touched on the pretrial issues, but, of course, our contention is that the cases relied on by the government are different, that restoration is at the time of the charge. Application in this case was ex post facto, and beyond that, the jury issue, the motion for judgment of acquittal should have been granted. So we ask to reverse and remand this case for further proceedings. Thank you. Thank you both for your very helpful arguments today. It's an important case, and we'll take it under advisement and issue an opinion forthwith. I think now, Judge Benedek, we've actually come to the end of our calendar. If we haven't, Judge Christin, we're both on the wrong track. Great. Thank you both so very much. We'll go ahead and stand in recess for today. Thank you. Thank you, judges and council members. Dear ye, all persons having had business with the Honorable, the United States Court of Appeals for the Ninth Circuit will now depart. For this court, for this session stands adjourned.
judges: Christen, Silver, Bennett